**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **TERRI A. BRANCH,** | ) | |
| | ) | **CASE NO. 4:10CV0485** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **MAGISTRATE JUDGE GREG WHITE** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security** | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| **Defendant.** | ) | |

Plaintiff, Terri A. Branch ("Branch"), challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Branch's claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381, *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is affirmed.

**I.  Procedural History**

On March 19, 2007, Branch filed an application for POD, DIB, and SSI alleging a disability onset date of March 18, 2007, and claiming that she was disabled due to diabetes, a herniated disc, neuropathy, asthma, and anemia.  (Tr. 140.)  Her application was denied both initially and upon reconsideration.  Branch timely requested an administrative hearing.

On March 19, 2009, an Administrative Law Judge ("ALJ") held a hearing during which Branch, represented by counsel, testified.  Samuel E. Edelmann, an impartial Vocational Expert ("VE") also testified.  On May 4, 2009, the ALJ found Branch was able to perform past relevant work as a cashier and, therefore, was not disabled.  The ALJ's decision became the final decision

of the Commissioner when the Appeals Council denied further review.

## II.  Evidence

### Personal and Vocational Evidence

Age 54 at the time of her administrative hearing, Branch is "closely approaching advanced age" under social security regulations.  *See* 20 C.F.R. §§ 404.1563; 416.963.  Branch has a high school education and past relevant work as a cashier.  (Tr. 25.)

### Hearing Testimony

At the hearing, Branch testified to the following:

- She suffers from diabetes, hypertension, asthma, back pain, and depression.  (Tr. 28-32.)  She has been diabetic for ten years.  (Tr. 28.)

- She has not seen a psychiatrist for her depression, but her primary care physician has prescribed medications.  (Tr. 31.)

- For the most part, she takes her medications as prescribed, except for the "nerve" pill, which she takes only when necessary as she does not want to become addicted.  (Tr. 31-32.)

- She has trouble sleeping at night and, therefore, wants to sleep all day.  (Tr. 32-33.)

- Her physical ailments have gradually worsened since applying for disability in 2007.  (Tr. 33-34.)

- She is able to walk about 100 feet before she needs to rest because her feet become tingly and numb.  (Tr. 34-35.)

- She is able to stand seven to ten minutes before she needs to sit.  (Tr. 35.)

- She is able to sit fifteen to twenty minutes before she has to stand up and walk around to relieve back pain.  *Id.*

- If sitting at a table, she can lift ten pounds; at other times it is difficult for her to lift a gallon of milk.  (Tr. 36.)

- She is able to care for her own personal needs like bathing and dressing.  *Id.*

- She is able to handle routine household chores such as preparing meals, washing dishes, doing laundry and cleaning the house.  *Id.*

- When she grocery shops, she takes her son or daughter with her as she tends to lose her balance.  *Id.*

- She has no outside activities.  (Tr. 36-37.)

- She described her cashiering job at Michael's as follows: she stood all day, worked solely as a cashier, and lifted objects weighing approximately one to two

2

pounds.  (Tr. 37.)

After the VE classified Branch's past work as a cashier as light and unskilled, the ALJ posed the following hypothetical to the VE:

> Let's assume we have an individual 54 years of age, high school education, work experience that you have defined and described.  Let's assume that she has a capacity for light work activity, but would not be able to engage in balancing or climbing.  She would not be able to engage in work that exposed her to pulmonary irritants such as smoke, dust, fumes, et cetera.  And she would be limited to simple, repetitive tasks involving routine work processes and settings.  She wouldn't be able to engage in work that required the operation of foot controls.

(Tr. 38-39.)

The VE testified that such an individual could perform Branch's past work as a cashier.  (Tr. 39.)  The VE also found that such a person could work at other light jobs, such as hand packager, assembler or sales clerk.  *Id*.  The ALJ further inquired whether the individual could work if she was absent three or more times per month.  The VE testified that there would be no jobs available for such an individual.  *Id*.  Lastly, the ALJ inquired whether the individual could work if she were off-task ten to fifteen percent of the workday.  (Tr. 39-40.)  Again, the VE testified there would be no jobs under those circumstances.  (Tr. 39-40.)

### III.  Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[1]

---

[1]The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity."  Second, the claimant must suffer from a "severe impairment."  A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities."  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000).  Fourth, if the claimant's

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended.  42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Branch was insured on her alleged disability onset date, March 18, 2007, and remained insured through the date of the ALJ's decision, May 4, 2009.  (Tr. 11.)  Therefore, in order to be entitled to POD and DIB, Branch must establish a continuous twelve month period of disability commencing between those dates.  Any discontinuity in the twelve month period precludes an entitlement to benefits.  *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A claimant may also be entitled to receive SSI benefits when she establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).  To receive SSI benefits, a claimant must also meet certain income and resource limitations.  20 C.F.R. §§ 416.1100 and 416.1201.

### IV.  Summary of Commissioner's Decision

The ALJ found Branch established medically determinable, severe impairments due to insulin dependent diabetes, peripheral neuropathy (feet and hands), high blood pressure, asthma, and obesity.  However, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  Branch was found capable of performing her past work as a cashier.  The ALJ determined that such work does not require the performance of activities precluded by her residual functional capacity ("RFC") as described in 20 C.F.R. §§ 404.1565 and 416.965.  The ALJ concluded that Branch was not under a disability from March 18, 2007, through the date of his decision.

### V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the

---

impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled.  *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

4

record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

### VI. Analysis

Branch claims the ALJ erred by: (1) failing to articulate a valid basis for disregarding her treating physician's opinion; (2) failing to articulate why her limitations did not meet or equal a listing; and (3) finding that she was capable of returning to past relevant work. (Doc. No. 12 at 5.)

#### Treating Source Opinions

Branch argues that the ALJ failed to give controlling weight to her treating physician's opinion, and instead, without saying so, gave controlling weight to the state agency reviewing physician. (Doc. No. 12 at 6-8.) The Commissioner contends that the ALJ did not give controlling weight to the state agency reviewing physician's opinion as the ALJ's RFC placed

5

even greater restrictions on Branch's functioning.  (Doc. No. 18 at 10-11.)

Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record."  *Meece v. Barnhart*, 192 F. App'x 456, 560 (6th Cir. 2006) (*quoting* 20 C.F.R. § 404.1527(d)(2)).  "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected."  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 192 Fed. App'x at 460-61 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.)  Furthermore, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927."  *Blakley*, 581 F.3d at 408.[2]

Nonetheless, the opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence.  *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406 ("It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record.") (*quoting* SSR 96-2p).  Moreover, the ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled, but may reject such determinations when good reasons are identified for not accepting them.  *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Duncan v.*

---

[2]Pursuant to 20 C.F.R. § 404.1527(d)(2), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

*Secretary of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).  According to 20 C.F.R. § 404.1527(e)(1), the Social Security Commissioner makes the determination whether a claimant meets the statutory definition of disability.  This necessarily includes a review of all the medical findings and other evidence that support a medical source's statement that one is disabled.  "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."  *Id.*  It is the Commissioner who must make the final decision on the ultimate issue of disability.  *Duncan*, 801 F.2d at 855;  *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Watkins v. Schweiker*, 667 F.2d 954, 958 n.1 (11th Cir. 1982).

Furthermore, in general, more weight is given to the opinions of examining medical sources than is given to the opinions of non-examining medical sources.  *See* 20 C.F.R. § 404.1527(d)(1). However, the opinions of non-examining state agency medical consultants have some value, and under certain circumstances can be given significant weight.  This occurs because the Commissioner views non-examining sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act."  Social Security Ruling 96-6p, 1996 WL 374180 at *2. Consequently, opinions of one-time examining physicians and record-reviewing physicians are weighed under the same factors as those of treating physicians, including supportability, consistency and specialization. *See* 20 C.F.R. § 404.1572(d), (f); *see also* Ruling 96-6p at *2-*3.

The record reflects that Branch was a patient of John D. Vance, M.D., since December 10, 2002, when she was diagnosed with diabetes mellitus, anemia, thyroidites and pharyngitis. (Tr. 296.)  Between 2003 and 2009, she visited Dr. Vance approximately 24 times, mostly as follow-ups for her diabetes.  (Tr. 279-295; 307-315.)  Dr. Vance first diagnosed Branch with neuropathy in July 2006 (Tr. 284) and then again on subsequent visits in March 2007, October 2007 and January 2009.  (Tr. 280, duplicated at 308, 309, 315.)  At the March 5, 2007, office visit, Dr. Vance noted that Branch "is disabled from work given her uncontrolled diabetes and, particuarly, her neuropathy which causes chronic pain, ataxia."  (Tr. 280, 308.)  Dr. Vance's treatment notes in 2008 and 2009 reflect that Branch was "doing quite well," "doing reasonably

7

well," and appeared "well."  (Tr. 311, 312, 315.)  At the office visit on January 19, 2009, Dr. Vance noted mild neuropathy.  (Tr. 315.)

Gary Demuth, M.D., a state agency physician, reviewed Branch's medical records and assessed her RFC in May 2007.  (Tr. 265-273.)  Dr. Demuth limited her exertional capacity to lifting and carrying fifty pounds occasionally and twenty-five pounds frequently, standing and walking about six hours a day, and sitting about six hours a day, which is consistent with medium work.[3]  (Tr. 266.)  Dr. Demuth felt that Branch could occasionally climb ramps and stairs, could never climb ladders, ropes, and scaffolds, and could frequently stoop, kneel, crouch, and crawl.  (Tr. 267.)  He also felt she should avoid hazards, such as machinery and heights.  (Tr. 269.)

Nick Albert, M.D., another state agency reviewing physician, affirmed Dr. Demuth's opinion in September 2007, after reviewing updated medical records.  (Tr. 305.)

The ALJ noted his reason for giving little weight to Dr. Vance's opinion:

> As for the opinion of Dr. Vance, it is noted that he reported the claimant was disabled from work due to uncontrolled diabetes.  However, Dr. Vance's opinion is inconsistent with his additional findings that the claimant's diabetes was well-controlled.  Further, it is noted that there was no evidence of other complications related to the claimant's diabetes mellitus such as retinitis proliferans, ascites or peripheral neuropathy with disorganization of motor function in two extremities documented in the record.  It is noted that the State agency consultant, who evaluated the evidence of record as part of the administrative process, concluded that the claimant would be capable of performing work of [sic] at the light exertional level notwithstanding her condition (Exhibit 6F).  Although this opinion is entitled to less weight as it was given by a nonexamining physician, it is considered a medical opinion and entitled to some weight (20 CFR 404.1512 and 404.1527; 416.912 and 416.927; 34 S.S.R.S. 189; HALLEX I-2-115).

(Tr. 17.)

Branch contends that the ALJ "cherry-picked" the evidence, ignoring certain findings of

---

[3]The regulations define medium level work as follows:

> Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can also do sedentary and light work.

20 C.F.R. §§ 404.1567(c), 416.967(c)

Dr. Vance.  (Doc. No. 12 at 8.)  The Commissioner responds that Dr. Demuth, the state agency reviewing doctor, addressed the relevant evidence.  (Doc. No. 18 at 11.)  Dr. Demuth noted that a March, 2007, physical examination from Dr. Vance showed Branch's lungs were clear, sensory responses for light touch and pinprick were intact, gross sensation was diminished, deep tendon reflexes were decreased, and gait was a little wide-based.  (Tr. 266, 271.)  Dr. Demuth also noted that there was no evidence of motor weakness.  (Tr. 266.)  He considered Dr. Vance's report that Branch's diabetes mellitus was uncontrolled, and neuropathy caused pain, ataxia and problems walking.  (Tr. 266, 271.)  Finally, he considered the allegation that Branch was able to stand for no more than one hour secondary to pain, but found no objective reason she could not stand or walk about six hours a day with normal breaks.  (Tr. 270.)

Although Dr. Vance diagnosed Branch as suffering from diabetes mellitus, Type 2 with severe neuropathy, uncontrolled hypertension, asthma, anemia, and a herniated disc at L4-L5 (Tr. 275), a treating physician's diagnosis is not by itself determinative of the ultimate disability determination.  *See Simons v. Barnhart*, 114 Fed. Appx. 727, 733-34 (6th Cir. 2004); *see also Landsaw v. Sec'y of Health & Human Serv.*, 803 F.2d 211, 213 (6th Cir. 1986); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of arthritis, of course, says nothing about the severity of the condition.").  The ALJ considered Dr. Vance's opinion as required and provided sufficient reasons for not giving it controlling weight.  (Tr. 15-17.)  He specifically stated that Dr. Vance's opinion on disability was inconsistent with his other findings that Branch's diabetes was well-controlled.  Finally, Dr. Vance's opinion that Branch was disabled from work due to her uncontrolled diabetes and neuropathy causing chronic pain (Tr. 280) was not entitled to controlling weight as it is the Commissioner who must make the final decision on the ultimate issue of disability.  *See Duncan*, 801 F.2d at 855.

### Listing 9.08 (Diabetes Mellitus)

Branch also argues that the ALJ failed to do a proper step-three analysis as to whether or not she meets or equals Listing 9.08A.  (Doc. No. 12 at 8-10.)  She contends the ALJ never specifically referred to that listing in his analysis.  *Id*.  The Commissioner responds that the objective medical evidence shows Branch did not meet the Listing.  (Doc. No. 18 at 7-10.)  The

9

Commissioner avers that the completion of Form SSA 831-U5 is proof that a physician has considered the issue of equivalency.  (Doc. No. 18 at 8-9.)

The burden of proof for establishing that an impairment meets or equals the requirements of a listed impairment rests with the claimant.  *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).  To meet a listed impairment, a claimant must satisfy all of the criteria in the listing.  *See Roby v. Comm'r of Soc. Sec.*, 48 Fed. Appx. 532, 536 (6th Cir. 2002) (*citing Hale v. Sec'y of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987)).  Pursuant to 20 C.F.R. Pt. 404, Subpt. P, Appx. 1, § 9.08A, to meet the listing for diabetes mellitus with neuropathy, a claimant must establish:

> A. Neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C);

11.00C (Neurological) provides:

> C.  Persistent disorganization of motor function in the form of paresis of paralysis, tremor or other involuntary movements, ataxia and sensory disturbances (any or all of which may be due to cerebral, cerebellar, brain stem, spinal cord, or peripheral nerve dysfunction) which occur singly or in various combinations, frequently provides the sole or partial basis for decision in cases of neurological impairment.  The assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms.

20 C.F.R. Pt. 404, Subpt. P, Appx. 1, 11.00C.

It is undisputed that Branch has diabetic neuropathy.  Even though the ALJ did not specifically cite to listing 9.08A, it is clear he addressed the requirements.  "Sixth Circuit case law does not require a heightened articulation standard at step three of the sequential evaluation process."  *See Marok v. Astrue,* 2010 WL 2294056, *3 (N.D. Ohio, Jun. 3, 2010) (*quoting Bledsoe v. Barnhart*, No. 04-4531, 2006 WL 229795, at *411 (6th Cir.  Jan.31, 2006)) (*citing Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1986)).  The regulations state that the ALJ should review all evidence of impairments to see if the sum of impairments is medically equivalent to a "listed impairment."  20 C.F.R. §§ 404.1526, 416.926.  In order to conduct a meaningful review, the ALJ's written decision must make sufficiently clear the reasons for his decision.  *Marok* at *3.

The ALJ, while addressing the listing requirements, noted Dr. Vance's finding in November 2006, that Branch "had no extremity edema, her peripheral pulses were intact, and her diabetes was well-controlled." (Tr. 14.) The ALJ further noted that in January 2009, Dr. Vance reported that Branch had "no cellulitic changes in the extremities." *Id*. Moreover, nowhere in the record is there evidence that Branch had "disorganization of motor function" due to peripheral neuropathy. Dr. Vance described her gait as wide based, but on later examinations noted it was "intact." (Tr. 280, 312.) In addition, at her visits with Dr. Vance in March, 2007, and February, 2008, Branch reported that she was feeling well. (Tr. 308, 311.) Dr. Demuth, the state agency physician, did not find any restrictions due to peripheral neuropathy as he concluded that Branch was capable of occasionally lifting 50 pounds, frequently lifting 25 pounds, standing and or walking about 6 hours and sitting about 6 hours. (Tr. 266.) Furthermore, Dr. Demuth noted that his findings were significantly different from Dr. Vance's findings because there is nothing in the medical record indicating motor weakness. (Tr. 271.) Upon reviewing updated medical evidence, Dr. Albert affirmed Dr. Demuth's findings. (Tr. 305.) The ALJ noted that no medical source of record had found Branch's impairments to meet or equal a listing. (Tr. 14.) The ALJ's analysis, though not specifically mentioning Listing 9.08, was sufficiently clear to allow for a meaningful review.

Branch argues that the reports of Drs. Demuth and Albert do not mention or express a rationale regarding the requirements of a listing. (Doc. No. 19 at 9-10.) As the Commissioner argues, completion of the Disability Determination and Transmittal Form (SSA 831) "ensures that consideration by a physician . . . designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review." (Doc. No. 18 at 8-9.) *See* SSR 96-6p at *3. The ALJ may rely upon such expert opinion to determine whether a claimant met a listing requirement. *Id*.; *Curry v. Sec'y of Health & Human Servs*., 1988 WL 89340 at *5 (6th Cir. Aug. 29, 1988) (*citing Fox v. Heckler*, 776 F.2d 738, 742 (7th Cir. 1985). In the instant case, the ALJ noted that the state agency consultant's opinion is entitled to less weight as it was given by a non-examining physician, but nonetheless, concluded that as a medical opinion it is entitled to some weight. (Tr. 17.) Because SSR 96-6p

11

allows an ALJ to rely on the Disability Determination and Transmittal forms (SSA-831) as medical opinions, the Court concludes that substantial evidence supports the ALJ's determination that Branch does not meet or equal a listing, to include specifically 9.08A.[4]

**Past Relevant Work**

Branch contends that the ALJ did not have substantial evidence to find that she could return to her past work as a cashier, or to any other light duty jobs.  (Doc. No. 12 at 10-12.)  The Commissioner responds that testimony from the VE provided substantial support for the ALJ's step four finding.  (Doc. No. 18 at 14-16.)

At step four, the ALJ must determine whether a claimant's RFC enables her to perform her past relevant work.  This step involves three substeps: (1) the ALJ must make specific findings of fact as to the claimant's RFC; (2) the ALJ must make findings regarding the physical and mental demands of the claimant's past relevant work; and, (3) the ALJ must compare the RFC to the past relevant work and determine whether the claimant has the capability to perform such past relevant work.  *See* 20 C.F.R. §§ 404.156; 416.960; SSR 82-62; *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3rd Cir. 2000); *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996).  Both RFC and past relevant work may be classified as either "sedentary," "light," "medium," "heavy," or "very heavy."  *See Burnett*, 220 F.3d at 120.

The ALJ determined Branch's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can not balance or climb.  Further, the claimant must avoid pulmonary irritants such as dust, smoke, fumes, etc.  Moreover, the claimant is limited to only simple, routine, repetitive tasks.  The claimant cannot use foot controls.[5]

(Tr. 14.)  After explaining the reasons for his findings, the ALJ concluded that Branch is capable of performing her past relevant work as a cashier, explaining:

---

[4]See Transcript at pages 43-46 for the Disability Determination and Transmittal forms completed by Drs. Demuth and Albert.

[5]Dr Demuth found Branch could do medium level work, which under the regulations, includes light work.  *See* 20 C.F.R. 404.1567(c), 416.967(c).

> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually performed. The claimant reported that she worked as a cashier from April, 2000-March, 2007 at Lowes Home Improvement, which requires light exertion and is unskilled (Exhibit 5E). The claimant's residual functional capacity permits the claimant to perform work at the light exertional level, with the additional limitations as set forth in Finding No. 5. Further, the vocational expert testified that the claimant was capable of returning to her past relevant work as cashier. Therefore, the claimant is able to perform her past relevant work as a cashier.

(Tr. 17.)

Courts have held that substantial evidence does not support a Commissioner's decision that a claimant can perform the duties of her past employment unless the Commissioner ascertains the demands of such work and relates those demands to the claimant's current physical capacities. *See Goodwin v. Astrue,* 2010 WL 1610942, *7 (S.D. Ohio Mar. 25, 2010); *Strittmatter v. Schweiker*, 729 F.2d 507 (7th Cir. 1984); *Roy v. Secretary of H.H.S.*, 512 F.Supp. 1245, 1259-60 (C.D. Ill. 1981). When a Commissioner fails to adduce such proof, or fails to demonstrate that the claimant's physical abilities are consistent with the demands of such work, a remand for further consideration is mandated. Furthermore, SSR 82-62 addresses the factors the ALJ must consider in determining whether a claimant is capable of performing past work, and concludes as follows:

> A decision that an individual is not disabled, if based on §§ 404.1520(e) and 416.920(e) of the regulations, must contain adequate rationale and findings dealing with all of the first four steps in the sequential evaluation process.

> In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain among the findings the following specific findings of fact:

>> 1. A finding of fact as to the individual's RFC.

>> 2. A finding of fact as to the physical and mental demands of the past job/occupation.

>> 3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

SSR 82-62 at *4. Here, the ALJ, complying with the regulations, properly set forth the necessary findings of fact. At the hearing, the VE testified that Branch's position as a cashier was considered light and unskilled. (Tr. 38.) Upon questioning by her attorney at the hearing,

13

Branch stated that her past work as a cashier at Michael's was performed at light duty as she had no other responsibilities, nor was she required to lift any items over one to two pounds. (Tr. 37-38.) As the ALJ determined Branch's RFC to be for light work, and the VE testified that the cashier's position was light, he complied with the regulations in identifying these factors.

Finally, Branch argues that the ALJ's comment that her daily activities did not support her claim of "totally debilitating symptomatology" was inappropriate under the criteria of disability. (Doc. No. 12 at 11.) Here, however, after noting that Branch reported she is "able to clean, do laundry, prepare meals, drive, go shopping, watch television, visit with family members, and handle money," the ALJ noted that "there is no evidence of any significant disuse muscle atrophy of the extremities on physical examination, which suggests the claimant moves about on a fairly regular basis notwithstanding her allegations of totally debilitating symptomatology." (Tr. 16.) Nothing in this analysis requires a remand.

### VII.  Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence. Accordingly, the decision of the Commissioner is affirmed and judgment is entered in favor of the defendant.

IT IS SO ORDERED.


s/ Greg White_____
United States Magistrate Judge

Date___December 9, 2010____